# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**HUNTER MATHIS**                                                                                                   **PLAINTIFF**

**V.**                              **NO. 4:20-cv-01490-BRW-ERE**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                    **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

On October 12, 2017, Hunter Mathis filed a Title II application for disability and disability insurance benefits, alleging disability beginning on August 29, 2017.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

1

*Tr. at 16*. In an August 8, 2019 written decision, an administrative law judge (ALJ) denied Mr. Mathis' application.[2] *Tr. at 28*. The Appeals Council denied Mr. Mathis' request for review on October 28, 2020. *Tr. at 1-2*. The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Mathis has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.     The Commissioner's Decision:

At step one of the required five-step analysis, the ALJ found that Mr. Mathis, who was 48 years old at the time of the hearing (*Tr. at 63*), had not engaged in substantial gainful activity since the alleged onset date of August 29, 2017.[3] *Tr. at 19*. At step two, the ALJ determined that Mr. Mathis has the following severe impairments: anterior cruciate ligament (ACL) tear status post repair, carpal tunnel syndrome status post carpal tunnel release, cervical spine degenerative disc disease, diabetes mellitus, hypertension, obstructive sleep apnea, and depression. *Id*.

---

[2] The Administrative Transcript (Doc. No. 10) is out of order. The written decision denying the application for benefits is at the end of the transcript, but the decision is numbered pages 16-28.

[3] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

After finding that Mr. Mathis' impairments did not meet or equal a listed impairment (*Tr. at 19*), the ALJ determined that he had the residual functional capacity (RFC) to perform work at the light exertional level, with the following additional limitations: (1) he cannot climb ladders, ropes, or scaffolds; (2) he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach overhead with the right upper extremity; (3) he can no more than frequently handle and finger; (4) he cannot perform foot control operations with the right lower extremity; (5) he is limited to work involving simple, routine, and repetitive tasks, with supervision that is simple, direct, and concrete; and (6) he is limited to jobs that can be learned within 30 days with a specific vocational preparation (SVP) of 1-2.[4] *Tr. at 22*.

The ALJ next found that Mr. Mathis was unable to perform any of his past relevant work. *Tr. at 26*. At step five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Mr. Mathis' age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, such as price marker and router. *Tr. at 26-27*. Therefore, the ALJ found that Mr. Mathis was not disabled. *Tr. at 27-28*.

---

[4] The SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); Dictionary of Occupational Titles app. C, at 1009 (4th ed. 1991).

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

4

### B.   Mr. Mathis' Arguments on Appeal

Mr. Mathis contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ: (1) did not resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles; (2) did not properly assess Mr. Mathis' subjective complaints; (3) did not incorporate all of Mr. Mathis' limitations in the RFC; and (4) failed to fully develop the record.

### C.   Medical Summary

The Court finds reversal is necessary because of an error the ALJ made in formulating the RFC with respect to handling, fingering, and overhead reaching restrictions. The medical summary is therefore limited to impairments related to those postural functions.[5]

A nerve conduction study from February 2016 showed moderate-to-severe carpal tunnel syndrome, with severe C8 (cervical) radiculopathy. *Tr. at 441*. Mr. Mathis had bilateral carpal tunnel release surgery in 2016. *Tr. at 63-65*. Objective testing revealed right sided neural-foraminal narrowing at C7-T1, which explained the progressive weakness in his right arm and hand. *Tr. at 35*. In June 2016, Mr. Mathis underwent right side neural laminotomy with opening of the neural foramen. *Id*.

---

[5] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

An orthopedist noted that Mr. Mathis had right-hand atrophy in July 2016. *Tr. at 383*. Mr. Mathis lacked the ability to extend his wrist and fingers. *Id*. In January 2017, Mr. Mathis reported to his surgeon that he had worsening neck pain, with severe headaches. *Tr. at 327*. He had limited range of motion in his neck due to severe pain. *Id*. An MRI of the cervical spine taken on January 31, 2017 revealed mild-to-moderate conditions, with progression of degenerative disc disease. *Tr. at 318*. Medication management and physical therapy were recommended. *Tr. at 323*.

In August 2017, Mr. Mathis saw his PCP, and complained of worsening right-hand problems. *Tr. at 367*. The PCP identified muscle wasting and atrophy in the right forearm. *Id*. In October 2017, Mr. Mathis' orthopedist noted "fairly severe C8 radiculopathy" which was causing significant radial nerve type symptoms. *Tr. at 387*. He suggested tendon transfer surgery. *Id*.

Two Disability Determination Services (DDS) medical experts reviewed the records in 2018 and found that Mr. Mathis would be limited to light work with postural restrictions. *Tr. at 106-107, 124-125*. Specifically, they said that Mr. Mathis was "limited" in overhead reaching, handling, and fingering. *Id.* They did not specify the frequency of the limitation, although the form that DDS experts fill out requires that they do so: "include to the extent which the function can be performed - e.g., constantly, frequently, occasionally, never, etc." *Id*. These medical experts did not offer that clarification.

Mr. Mathis testified at the hearing that he had problems handling and gripping with his right arm, and his wife testified that she had to perform tasks for him that required the use of the right arm or hand. *Tr. at 70-73, 81-86*.

### D.     Analysis of Mr. Mathis' RFC argument

Mr. Mathis asserts that the assigned RFC for reaching, fingering, and handling was not based upon substantial evidence.[6] The ALJ found the DDS opinions to be persuasive, but then the assigned RFC stated that Mr. Mathis could no more than occasionally reach overhead and no more than frequently handle and finger. *Tr. at 21-22, 25*. Mr. Mathis avers that because the DDS experts did not specify the frequency with which he could perform those tasks, the ALJ was merely making an assumption about medical records when he assigned the RFC for those functions.[7] Mr. Mathis rightly points out that there is no way to tell why the ALJ assigned ***occasional*** overhead reaching and ***frequent*** handling and fingering when the DDS experts merely said "limited" when asked about those functions. *Tr. at 106-107, 124-*

---

[6] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[7] There were no other medical opinions addressing the specific functional limitations of Mr. Mathis.

7

*125*. The Court cannot discern why the ALJ made one function more restrictive than the other.

An ALJ may not draw his own inferences from medical reports, which is just what the ALJ did here. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Because a claimant's RFC is a medical question, the ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Cox. v Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). It is the imprecision in the DDS medical opinions that undermines the ALJ's RFC determination.

Mr. Mathis explained he had right arm and hand problems, and his wife verified that. The medical records supported that testimony. Yet, there was no medical opinion about the frequency with which Mr. Mathis could reach overhead, handle, or finger. The DDS experts failed to opine with the necessary specificity, so the foundation for the ALJ's assigned RFC is insufficient.

There is another problem with the RFC. When Mr. Mathis' attorney asked the VE if there were jobs available for someone like Mr. Mathis who could not perform more that occasional reaching, the VE said that the two jobs of price marker and router would be eliminated. *Tr. at 90-91*. In the face of that evidence, the ALJ concluded that Mr. Mathis could perform those two jobs even with an RFC limitation to not more than occasional reaching. *Tr. at 21-22, 27*. This presents a conflict that warrants reversal of the ALJ's decision.

## III. Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 11th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE